Akinsade v. Holder

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: February 9, 2012                    Decided: May 1, 2012 )

Docket No. 10-0662-ag

_____

TEMITOPE TAJU AKINSADE,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

B e f o r e :

KATZMANN, CHIN, AND CARNEY, *Circuit Judges.*

_____

Temitope Taju Akinsade petitions for review of a February 5, 2010 Board of Immigration

Appeals ("BIA") order adopting and affirming Immigration Judge John B. Reid's October 23,

2009 decision finding Akinsade removable under Immigration and Nationality Act ("INA")

§ 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because his conviction of embezzlement by a

bank employee under 18 U.S.C. § 656 constituted an aggravated felony as defined in INA

§ 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i).  We hold that because none of the facts to which Akinsade actually and necessarily pleaded to establish the elements of his embezzlement offense reveals whether that offense was committed with a specific intent to defraud, it was error for the BIA to infer that his conviction was an offense involving fraud or deceit.  Accordingly, for the reasons stated below, the petition for review is **GRANTED**, the BIA's decision is **VACATED**, and we **REMAND** for further proceedings consistent with this opinion.

_____

THOMAS K. RAGLAND, Duane Morris LLP, Washington, D.C., *for Petitioner*.

GREGORY MACK (Anthony W. Norwood, Senior Litigation Counsel, Terri J. Scadron, Assistant Director, Tony West, Assistant Attorney General, *on the brief*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent.*

_____

KATZMANN, *Circuit Judge*:

This case requires us to consider whether Temitope Taju Akinsade's ("Akinsade" or "petitioner") record of conviction for embezzlement by a bank employee in violation of 18 U.S.C. § 656 ("§ 656") establishes that he actually and necessarily pleaded to committing an offense that involved fraud or deceit.  For the reasons set forth below, we conclude that it was error for the Board of Immigration Appeals ("BIA") to have inferred from Akinsade's plea colloquy that he committed embezzlement with an intent to defraud.  Accordingly, we grant Akinsade's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

**BACKGROUND**

A.      Fact Overview

Akinsade is a thirty-one-year-old noncitizen from Nigeria, who was first admitted to the United States on July 30, 1988, at the age of seven, as a B-2 nonimmigrant.  In 2000, as a teenager, Akinsade was convicted of a nonviolent crime for which he has fully paid his debt.  Since his conviction, he has impressively turned his life around.  On May 4, 2000, Akinsade adjusted his status to become a lawful permanent resident.  He received a Bachelor of Science degree in computer science and a Masters of Science degree, both from the University of Maryland.  He was awarded the prestigious National Science Foundation fellowship, and was chosen to participate in a leadership program at the General Electric Company ("GE").  Now, years after his criminal conviction, Akinsade finds himself in deportation proceedings.  In the exercise of its discretion, the federal government instituted deportation proceedings against Akinsade because of the nonviolent crime that he committed nearly a decade before, notwithstanding his apparently unblemished record since.

B.      The Criminal Conviction

On March 1, 2000, the United States Attorney for the District of Maryland issued a criminal information charging Akinsade with embezzlement by a bank employee in violation of § 656.[1]  The information read, in relevant part, that:

_____

[1] Section 656 is titled "Theft, embezzlement, or misapplication by bank officer or employee."  It provides, in relevant part, that:

> Whoever, being an . . . employee of, or connected in any capacity with any
> Federal Reserve bank, member bank, depository institution holding company, [or]
> national bank . . . operating under section 25 or section 25(a) of the Federal
> Reserve Act [12 U.S.C. §§ 601 *et seq.*, 611 *et seq.*] . . . embezzles, abstracts,

3

Temitope Akinsade being an agent and employee of Chevy Chase Bank . . . did knowingly embezzle, abstract, purloin and willfully misapply monies and funds intrusted to the custody and care of such bank in the approximate amount of $16,400.

J.A. 351.

On March 20, 2000, Akinsade pled guilty to a single count in the information.[2] During Akinsade's plea colloquy, the Honorable Alexander Williams, Jr., United States District Judge for the District of Maryland, explained to petitioner his rights and received a knowing and voluntary waiver. The district court further explained that by agreeing to plead guilty, Akinsade

purloins or willfully misapplies any of the moneys, funds or credits of such bank . . . or any moneys, funds, assets or securities intrusted to the custody or care of such bank . . . or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

*Id.* (citation omitted).

[2] The "statement of facts" in Akinsade's plea agreement provided that he:

was employed by Chevy Chase Bank at a branch in Aspen Hill, Maryland as a teller from on or about January 11, 1999 until on or about August 6, 1999 . . . .

On or about July 22, 1999, July 26, 1999, and July 30, 1999, Mr. Akinsade agreed and did process fraudulent checks presented by accomplices in the amounts of $3,000, $5,900 and $7,500 respectively. Mr. Akinsade deposited some of the proceeds to the bank account of a friend and some to his own bank account.

The fraudulent checks totaled $16,400.

J.A. 257-58. The plea agreement itself is not included in the appellate record. Instead the government cites a page in Akinsade's presentence report, prepared by the probation department of the United States District Court for the District of Maryland, which includes a quote from the plea agreement. Because neither the immigration judge ("IJ") nor the BIA relied on this document, we need not decide whether it is part of Akinsade's record of conviction.

4

could be sentenced to thirty years' imprisonment and a fine of one million dollars. Judge

Williams also warned Akinsade that if he was not a citizen, he could be deported. Finally, the

government stated on-the-record the facts it believed it could prove if the matter went to trial,

including that:

> on or about July 22, 1999, July 26, 1999 and July 30, 1999, Mr. Akinsade agreed
> to and did process fraudulent checks presented by accomplices in the amounts of
> $3,000, $5,900, and $7,500 respectively. Mr. Akinsade deposited some of the
> proceeds in a bank account of a friend and some to his own bank account. . . .

> [T]he fraudulent checks totaled $16,400. . . . [O]n or about July 30, 1999 in the
> State of Maryland, Mr. Akinsade, while an agent and employee of Chevy Chase
> Bank, a bank the deposits of which were insured by the Federal Deposit Insurance
> Co[r]p[o]ration, did knowingly embezzle abstract from --- will [sic] misapplied
> monies and funds entrusted of custody and care of the bank in the approximate
> amount of $16,400.

*Id*. 279-80. Akinsade then stood and told the court that he agreed that these facts were

"essentially . . . what happened in this case." *Id*. 280.

On June 5, 2000, Akinsade was sentenced to one month imprisonment, which he was

permitted to serve in community confinement, plus three years of supervised release and a $100

special assessment. Petitioner paid restitution in full for his offense prior to sentencing.

C.     Post-Conviction, 2000 – 2009

After his conviction, Akinsade entered the University of Maryland and earned a Bachelor

of Science degree in computer science. He then enrolled in graduate school at the University of

Maryland and was awarded a full fellowship from the National Science Foundation. He earned a

Master of Science degree, graduating with a 3.9 grade-point average. Following graduate

school, petitioner entered a leadership program at GE, and relocated to upstate New York, where

he worked in the company's Global Research Center.

5

D.      Immigration Proceedings

Nearly nine years after his conviction, on January 8, 2009, Akinsade was arrested at his home in Latham, New York, by United States Immigration and Customs Enforcement ("ICE") officers and sent to immigration detention in Batavia, New York.  Akinsade "came to the attention of ICE after he was stopped and subsequently arrested by the Menands, NY, police for having an expired registration and suspended license.  [Akinsade] . . . paid a fine and the case was closed."  J.A. 334. The Department of Homeland Security ("DHS") issued a Notice to Appear, dated January 8, 2009, charging Akinsade with removability as an alien convicted of an aggravated felony under the Immigration and Nationality Act ("INA"), on the grounds that his conviction under § 656 constituted:  (1) an offense involving fraud or deceit under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) ("§ 1227(a)(2)(A)(iii)"); and (2) a crime involving moral turpitude under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A).[3]  On February 24, 2009, DHS lodged an additional charge of removability under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A) (alien who sought to procure a visa or admission to the United States by fraud or willfully misrepresenting a material fact).

_____

[3] Section 1227(a) titled, "[c]lasses of deportable aliens," provides, in relevant part, that:

Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

(2) Criminal offenses
        (A) General crimes
                (iii) Aggravated felony – Any alien who is convicted of any
                aggravated felony at any time after admission is deportable.

*Id.*
        An "aggravated felony" felony includes an "offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i).

6

In proceedings before IJ John B. Reid, Akinsade denied the charge of removability, moved for termination of proceedings, and, in the alternative, applied for cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a). The IJ conducted multiple hearings between February and October 2009. On October 23, 2009, the IJ rejected the last two charges.[4] The IJ also entered an oral decision sustaining the aggravated felony charge of removal under § 1227(a)(2)(A)(iii). In particular, the IJ found "that the information . . . and also the plea colloquy . . . make it clear that the respondent's actions related to a fraud on the bank and not an injury." J.A. 86. Thus, the IJ concluded that "respondent's conviction . . . involv[ed] fraud or deceit," *id*. at 87, and that Akinsade was therefore removable under § 1227(a)(2)(A)(iii). Additionally, because the ground for Akinsade's removal was commission of an aggravated felony, the IJ held that although petitioner had "a very sympathetic case," *id.* at 84, he was ineligible for relief from removal. Accordingly, the IJ denied Akinsade's application for cancellation of removal and ordered him removed to Nigeria.

On December 22, 2009, Akinsade's appeal of the IJ's decision was timely filed. In his appeal to the BIA, Akinsade argued that the IJ erred in finding that his conviction under § 656 was an offense involving fraud and deceit. Akinsade maintained that the intent element of § 656 is divisible in nature, *i.e.*, it can be satisfied by either an intent to injure or an intent to defraud, and that nothing in his record of conviction revealed the specific intent with which he had acted. Thus, Akinsade argued, his conviction cannot be deemed an aggravated felony offense.

---

[4] Specifically, the IJ found that the government had failed to establish by clear and convincing evidence that Akinsade obtained his adjustment of status through fraud or willful mispresentation of a material fact, or that he was not entitled to adjustment of status because he had been convicted of a crime involving moral turpitude.

On February 5, 2010, a single member of the BIA dismissed Akinsade's appeal in an unpublished opinion adopting the IJ's decision and noting that "[e]ven if we were to accept the respondent's argument that the statu[t]e in question is divisible in nature, the Immigration Judge properly relied upon the respondent's conviction record to conclude that he was convicted of an aggravated felony." J.A. 3.

E.      The Petition for Review

On February 25, 2010, petitioner, proceeding *pro se*, timely petitioned for review of the BIA's decision in this Court. At that time, Akinsade was detained in ICE custody, as he had been throughout his removal proceedings before the IJ and the BIA. On April 9, 2010, the government filed a motion to dismiss the petition for lack of jurisdiction and opposing Akinsade's request for stay of removal. Petitioner responded on April 26, 2010.

F.      Release from Detention

After nearly seventeen months in detention, Akinsade was released on June 1, 2010. Following his release, Akinsade retained his current counsel, found a job with an information technology company in the Washington, D.C. area, and married his longtime girlfriend. Additionally, Akinsade's former dean at the University of Maryland apparently contacted him to report that the National Science Foundation had offered him a fellowship to enter a Ph.D. program. On August 25, 2010, we denied the government's motion to dismiss and referred Akinsade's motion for a stay of removal to this panel.

**DISCUSSION**

On appeal, Akinsade concedes that he was convicted of a crime that resulted in a loss of more than $10,000, and that a conviction under § 656 may constitute an aggravated felony in

8

certain circumstances. Instead, he argues only that the IJ and the BIA erred in concluding that

DHS "presented clear and convincing evidence of his removability under" § 1227(a)(2)(A)(iii)

"as a non-citizen convicted of an aggravated felony as defined" in INA § 101(a)(M)(i), 8 U.S.C.

§ 1101(a)(43)(M)(i) ("§ 1101(a)(43)(M)(i)"). Reply Br. 1-2. "Specifically, [p]etitioner disputes

the government's contention that the reviewable record of conviction establishes that 'he acted

with intent to defraud' the bank in which he was employed." *Id.* at 2. For the reasons set forth

below, we agree with Akinsade and hold that his record of conviction does not support the BIA's

conclusion that he was convicted of an aggravated felony.

I.      Jurisdiction and Standard of Review

        "Federal courts lack jurisdiction to consider a petition for review filed by an alien who is

removable due to commission of an aggravated felony, but we retain jurisdiction to review

whether an alien has, as a matter of law, committed such an aggravated felony." *Prus v. Holder*,

660 F.3d 144, 146 (2d Cir. 2011) (per curiam). We review *de novo* "whether a specific

conviction constitutes an aggravated felony." *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir.

2009). "Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we

review the decision of the IJ as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105

(2d Cir. 2007). However, we afford no deference to the BIA where, as in this case, the

challenged BIA decision is unpublished. *Pierre*, 588 F.3d at 772.

II.     Akinsade's Alleged Aggravated Felony

        With these principles in mind, we turn to whether Akinsade's conviction for

embezzlement by a bank employee was an aggravated felony such that he was removable under

§ 1227(a)(2)(A)(iii) and ineligible for relief from removal.

9

A.     The Categorical and Modified Categorical Approach

"In general, the BIA and this Court have applied either a 'categorical' or a 'modified categorical' approach to determine whether a specific crime falls within a grounds for removability." *Wala*, 511 F.3d at 107. Under the categorical approach, a reviewing court "look[s] only to the elements of the offense of conviction and not to the factual circumstances of the crime." *Ming Lam Sui v. INS*, 250 F.3d 105, 116 (2d Cir. 2001). By contrast, where a statute is "'divisible,' such that some categories of proscribed conduct render an alien removable and some do not," application of a "modified categorical" approach is appropriate. *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116, 126 (2d Cir. 2007), *abrogated on other grounds by Nijhawan v. Holder*, 129 S. Ct. 2294, 2298 (2009); *see also Wala*, 511 F.3d at 107; *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 167 (2d Cir. 2006); *Dickson v. Ashcroft*, 346 F.3d 44, 48 (2d Cir. 2003) ("Where . . . a criminal statute encompasses diverse classes of criminal acts – some of which would categorically be grounds for removal and others of which would not – we have held that such statutes can be considered 'divisible' statutes."). Under the modified categorical approach, "we may refer to the record of conviction to ascertain whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses." *Wala*, 511 F.3d at 107 (internal quotation marks omitted). This Court has held that the record of conviction consists of materials including "a charging document (such as an indictment), a signed plea agreement, a verdict or judgment of conviction, a record of the sentence; a plea colloquy transcript, and jury instructions." *Dulal-Whiteway*, 501 F.3d at 128-29 (holding that IJ erred by relying on presentence report and restitution order to find that alien was convicted of fraud involving loss greater than $10,000); *but see Nijhawan*, 129 S. Ct. at 2302-03 (holding that

10

an IJ is not limited to considering the evidentiary materials permitted under the modified categorical approach when determining whether the loss involved in a prior fraud or deceit conviction amounted to at least $10,000).

With respect to guilty pleas, under the modified categorical approach as applied to immigration proceedings, "the BIA may rely only upon facts to which a defendant 'necessarily pleaded' in order to determine the type of conduct that represented the basis of an alien's conviction." *Wala*, 511 F.3d at 108; *see Dulal-Whiteway*, 501 F.3d at 131 (holding that the BIA may only consider "facts to which a defendant *actually and necessarily pleaded* in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript" (emphasis added)). "[T]he 'necessarily pleaded' language refers not just to whether a petitioner pled guilty to elements of the underlying . . . offense, but also to whether by pleading guilty, he pled those facts necessary to establish that he violated a divisible statute in a manner that satisfies the grounds" for removal. *Wala*, 511 F.3d at 108; *see also Dickson*, 346 F.3d at 48-49 ("In reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal."). "[A] petitioner necessarily pleads to facts when, for example, he actually admits specific facts in his plea colloquy or comparable judicial record that establish he violated a divisible statute in [a] manner that satisfies the criteria of the pertinent removability statute." *Wala*, 511 F.3d at 108. If a statute "requires no finding of the particular element at issue and there is no charging document that narrows the charge to those limits, the only certainty in a pleaded case of that finding lies in the defendant's own admissions or accepted findings of fact

11

confirming the factual basis for a valid plea." *Id.* at 110 (internal quotation marks, brackets, and ellipses omitted) (citing *Shepard v. United States*, 544 U.S. 13, 25 (2005)).

### B. The BIA's Error

The IJ accepted Akinsade's argument that he could have been convicted either for acting with the intent to defraud or to injure the bank, and "if it [was] to injure the bank it would not fall within the fraud or deceit provision and, therefore, the respondent would not have been found to have been convicted of an aggravated felony under that section of the law." J.A. 86. Similarly, the BIA assumed "that the statu[t]e in question is divisible in nature." *Id*. at 3. Finally, the government agrees that the IJ and BIA were obligated to employ the traditional modified categorical approach when determining whether Akinsade committed an aggravated felony. Resp't's Br. 18 & n.7. *Cf. Pierre*, 588 F.3d at 773 (2d Cir. 2009) (noting that under *Nijhawan*, a "circumstance-specific" approach is permitted when "determining whether the monetary threshold" in §1101(a)(43)(M)(i) has been met) (internal quotation marks omitted); *Lanferman v. BIA*, 576 F.3d 84, 89 n.3 (2d Cir. 2009) (per curiam) (holding that "*Nijhawan* does not change the list of documents that may be considered in the divisibility analysis, and we do not extend it to such a context."). Thus, for the purposes of this case we assume the statute is divisible and proceed under the modified categorical approach to examine whether Akinsade's record of conviction necessarily admits facts establishing that he committed an offense involving fraud or deceit.[5] More specifically, because the government conceded at oral argument that the intent to defraud rather than the intent to injure was required to sustain the removability charge, Tr.

---

[5] This Court has yet to decide on an "approach for determining when a statute is . . . divisible." *Oouch v. U.S. Dep't of Homeland Sec.*, 633 F.3d 119, 122 (2d Cir. 2011). Because the IJ and the BIA proceeded as if § 656 was divisible, it is unnecessary for us to address this open question.

12

12:25-13:8, the issue is whether Akinsade's record of conviction necessarily supports the result. We hold that it does not, and that the BIA erred in deeming Akinsade removable.

In Akinsade's case, the record of conviction consists of an information, a judgment of conviction, and a plea colloquy transcript. None of these documents reveals that Akinsade actually and necessarily pleaded that he acted with an intent to defraud or deceive. Petitioner pled guilty to the information, which merely set forth the elements of the offense of embezzlement by bank employee under § 656 – an offense that the government acknowledges can be committed with *either* an intent to injure or an intent to defraud. *See United States v. Lung Fong Chen*, 393 F.3d 139, 145-46 (2d Cir. 2004) ("Section 656's intent requirement is properly read in the disjunctive and thus proof of intent to injure *or* defraud is sufficient to support a conviction."). Neither the information nor the judgment reveals the intent with which Akinsade committed the offense.

Likewise, the plea colloquy transcript does not resolve this issue. During the colloquy, Akinsade accepted guilt for embezzlement. The record, however, is silent as to his intent at the time he perpetrated the offense. As evidence that Akinsade acted with an intent to defraud, the government points to Akinsade's concession at his plea colloquy that what "essentially . . . happened" in his case was that he "process[ed] fraudulent checks presented by accomplices" and that he "knowingly embezzle[d]" money from the bank. J.A. 279-80. But neither of these statements equate to Akinsade admitting that he *knew* the checks were fraudulent at the time he committed the offense or that he had *knowingly* processed fraudulent checks. Instead, from these statements, the IJ and the BIA *inferred* that Akinsade acted with a specific intent to defraud. Under the modified categorical approach, the BIA cannot make such an inference, even if it is

13

reasonable. *See Wala*, 511 F.3d at 109-10. For instance, in *Wala*, we considered a BIA determination that an immigrant convicted of third-degree burglary under a Connecticut statute had committed a crime involving moral turpitude ("CIMT") within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id.* We vacated the BIA's decision after finding that the BIA considers a burglary a CIMT only if it is a permanent taking and, under the modified categorical approach, the BIA could not "infer" from Wala's plea colloquy that he "intended a larceny offense involving a permanent, rather than a temporary, taking of property." *Id.* at 103, 109-10. Significantly, we reached this conclusion despite our observation that the BIA's inference was reasonable and that an alternative inference – *e.g.*, that "Wala . . . [took] the [victim's] jewelry with the intent to loan it to his girlfriend for one 'night on the town' and then return it" – may have been "improbable." *Id.* at 109.[6] Like Wala, because Akinsade "did not admit to, was not charged with, and was not required to plead to," *id.*, acting with an intent to defraud, his plea does not necessarily rest on facts identifying his conviction as an offense involving fraud or deceit.

The government's brief inconsistently asserts that: (1) the IJ properly employed the modified categorical approach to determine if Akinsade committed an aggravated felony; and (2)

---

[6] Our holding that the BIA erred in inferring that Akinsade acted with a specific intent to defraud is supported by the Third Circuit's opinion in *Valansi v. Ashcroft*, 278 F.3d 203 (3d Cir. 2002), which considered whether a conviction under § 656 "qualifie[d] as a crime 'involving fraud or deceit.'" *Id.* at 210. Upon review of the record of conviction, the court found that "Valansi accepted guilt for theft and an intent to injure, but did not clearly accept guilt as to any fraudulent intent." *Id.* at 217. Thus, because the court did "not know and [could] not speculate . . . whether Valansi would have accepted that her conduct amounted to an intent to defraud rather than to injure her employer," it concluded that the BIA had erred in finding that Valansi's conviction under § 656 was an aggravated felony. *Id.*

14

embezzlement necessarily involves fraud or deceit, regardless of the specific intent with which it is perpetrated because in order to embezzle "'there must be an intentional and fraudulent appropriation or conversion of . . . money.'" Resp't's Br. 22 (quoting Black's Law Dictionary at 468 (5th ed. 1979)). We need not address the latter of these arguments in light of the government's concession at oral argument that if Akinsade's record of conviction does not show that he acted with the specific intent to defraud, the conviction "fall[s] outside the fraud or deceit scope of the aggravated felony provision." Tr. 13:7-8.

The Supreme Court has underscored "the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). In such circumstances, the need for precision and clarity in plea agreements and allocutions is especially acute.

Finally, we pause to express a concern, unrelated to the grounds on which we resolve this appeal. At argument, we asked the government, for informational purposes, whether Akinsade's case might be one in which relief from prosecution would be exercised, pursuant to the Morton Memoranda. *See* Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, to All ICE Employees (Mar. 2, 2011) ("Subject: Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens"); Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, to All Field Office Directors, All Special Agents in Charge, All Chief Counsel (June 17, 2011) ("Subject: Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens"). Under the terms of the Morton Memoranda, the government announced that it would be reviewing all immigration cases

15

as part of its initiative to focus on those who have committed violent crimes, and with the prospect of granting relief from prosecution in the exercise of discretion as to cases that met certain criteria. The government responded that Akinsade's having filed a *coram nobis* petition in another proceeding challenging the constitutionality of his underlying conviction was a factor in the government's decision not to exercise its prosecutorial discretion. *See* Tr. 20:4-7 ("[T]his is an individual who's attacking his removal order and is attacking his criminal conviction. And I would doubt that [ICE officials] would exercise prosecutorial discretion in this case . . . ."); *id.* 22:1-7 (Whether an individual is "pursuing his rights" is "certainly in the background that could be looked at in this case in terms of why should we exercise prosecutorial discretion with respect to this particular individual. And that will be part of the mosaic that the immigration authorities would look at."). We would be troubled if indeed it is the government's position that petitioners will be penalized for exercising their legitimate rights to pursue their arguments fully. *See Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (holding that differential treatment based on the "'intent to inhibit or punish the exercise of constitutional rights'" was basis for selective enforcement claim) (quoting *LaTriest Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)).

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED**. Accordingly, we **VACATE** the BIA's February 5, 2010 decision and **REMAND** to the BIA for further proceedings consistent with this opinion.

16