TRAXLER, Chief Judge,
dissenting:
Temitope Akinsade alleges his lawyer provided ineffective assistance by telling *257 him if he pled guilty he would not be deported for his offense. Akinsade claims this advice left him unaware that he could be deported as a result of pleading guilty, even though the district judge specifically advised him that deportation was possible and he acknowledged this fact on the record before pleading guilty. He nonetheless asks us to vacate his conviction on the grounds that he would not have entered the underlying guilty plea had he known that doing so would subject him to mandatory deportation.
As it turns out, Akinsade’s lawyer correctly predicted that Akinsade’s guilty plea would not render him deportable. While this coram nobis appeal was pending before us, the Second Circuit decided Akinsade’s immigration appeal in his favor, concluding that he did not plead guilty to a removable offense. See Akinsade v. Holder, 678 F.3d 138, 143 (2d Cir.2012). The government has since indicated that it will not seek review of the Second Circuit’s decision and will not oppose termination of removal proceedings against Akinsade. Akinsade cannot and will not be deported as a consequence of his guilty plea in this case. I therefore dissent from the odd decision to vacate Akinsade’s plea based on advice from his lawyer that ultimately proved to be accurate.
I.
A true and complete analysis of Akinsade’s claim for coram nobis relief is impossible without consideration of the parallel but intertwined proceedings in this case — the coram nobis appeal in this circuit, springing from the underlying criminal proceeding, and the immigration appeal in the Second Circuit. Since each proceeding greatly impacts the other, we cannot ignore Akinsade’s immigration proceeding, or its ultimate conclusion, any more than we can ignore what occurred before or during Akinsade’s plea colloquy. Accordingly, what follows is an abridged summary of these related and overlapping proceedings.

The Underlying Criminal Conviction

In March 2000, Akinsade was charged with embezzlement by a bank employee in the amount of $16,400. See 18 U.S.C. § 656.[1] According to Akinsade, his lawyer assured him that he would not be subject to deportation if he pled guilty to the embezzlement charge. Ultimately, after discussing his case with counsel, Akinsade decided to plead guilty. During the plea colloquy, the district judge told Akinsade, in contrast to the advice of his attorney, that he could in fact be removed if he pled guilty. Akinsade indicated that he understood these consequences but still wished to plead guilty.[2] Akinsade was sentenced *258 to one month imprisonment, which he served in community confinement. Around this time, Akinsade adjusted his status to become a lawful permanent resident.

Removal Proceedings in the Second Circuit

In January 2009, immigration authorities detained Akinsade and charged him with removability on the basis that the embezzlement conviction qualified as an aggravated felony. See 8 U.S.C. § 1227(a)(2)(A)(iii). The Immigration and Nationality Act (“INA”) defines an “aggravated felony” to include any “offense that ... involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” 8 U.S.C. § 1101(a)(43)(M)(i).[3] Akinsade denied that he was removable and, as an alternative, sought cancellation of removal.
The Immigration Judge sustained the aggravated felony charge of removal, finding “ ‘that the information ... and also the plea colloquy ... make it clear that the respondent’s actions related to a fraud on the bank and not an injury.’ ” Akinsade, 678 F.3d at 142. Akinsade appealed to the BIA, arguing that his record of conviction was insufficient to show that his embezzlement offense under 18 U.S.C. § 656 involved a specific intent to defraud. The BIA dismissed Akinsade’s appeal, holding that the record of conviction was sufficient to show that Akinsade committed an aggravated felony.
In February 2010, Akinsade petitioned the Second Circuit Court of Appeals for review of the BIA’s decision, arguing that he did not plead guilty to a removable offense because the record of conviction failed to establish that Akinsade acted with the “intent to defraud” required for an aggravated felony under 8 U.S.C. § 1101 (a)(43)(M)(i). Akinsade’s petition for review was still pending in the Second Circuit when this court held oral argument on Akinsade’s coram nobis petition.

Coram Nobis Proceedings in the Fourth Circuit

In May 2009, while removal proceedings before the Immigration Judge were ongoing, Akinsade filed his coram nobis petition seeking to vacate his guilty plea, claiming that he received ineffective assistance of counsel in connection with his guilty plea. Specifically, Akinsade alleged that before he entered his guilty plea, his lawyer told him, contrary to law, that a guilty plea to the embezzlement charge “would not constitute a deportable offense.” J.A. 55. Even though the district judge expressly warned Akinsade that he could be removed if he pled guilty, Akinsade claimed in his coram nobis petition that he had never been informed by his “criminal defense counsel or [the district court] that the guilty plea in this case would or could affect [his] immigration status,” and that “[h]ad [he] known” he risked removal, he would not have pled guilty to embezzling more than $10,000 and would have gone to trial or attempted to plead to a lesser amount. J.A. 56.
*259 The district court concluded that counsel’s performance was constitutionally deficient, see Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but determined that Akinsade failed to establish prejudice resulting from his attorney’s performance because the court specifically advised him during the plea colloquy that deportation was a potential consequence:
[T]he Court does not find the resulting prejudice required under the second prong of Strickland. Notwithstanding counsel’s alleged affirmative misrepresentations, this Court advised Petitioner on March 20, 2000 that Petitioner could be deported if the Court accepted his guilty plea to the felony charge. The Court further inquired of Petitioner whether knowing that his guilty plea could trigger deportation proceedings, he still wished to plead guilty. Petitioner replied in the affirmative. (Trans, page 13)
Accordingly, ... the Court finds that Petitioner made a knowing, understanding and voluntary decision to plead guilty and ... the Court does not believe that Petitioner on this record has presented a basis for ineffective assistance of counsel....
J.A. 86-87. The district court therefore denied Akinsade’s request for coram nobis relief from his embezzlement conviction.
Akinsade appealed the district court’s order, arguing that the district court’s admonishment during the plea colloquy was insufficient to “cure” -counsel’s misadvice because “the district court ... did not instruct Akinsade that his guilty plea would automatically render him ... deportable.” Appellant’s First Supp. Brief at 13. Akinsade contends on appeal that a court’s mere warning that deportation is a possibility is not enough to overcome his attorney’s misadvice; rather, Akinsade contends that the prejudice he suffered could only have been overcome by a warning from the district court “that deportation- would result from the plea.” Id. at 22.
The government’s primary argument on appeal — at least before the Second Circuit’s decision in Akinsade v. Holder — was that Akinsade “cannot establish that he was prejudiced by counsel’s erroneous advice” in light of the fact that he had “been warned personally by the district court about possible deportation based on his guilty plea, and confirm[ed] his desire to proceed even in light of this possibility.” Brief of Appellee at 6.

The Second Circuit’s Akinsade Decision and Subsequent Immigration Proceedings

On May 1, 2012, the Second Circuit granted Akinsade’s petition for review, holding that Akinsade was not subject to deportation as an aggravated felon. See Akinsade, 678 F.3d at 140, 143. To constitute an aggravated felony, Akinsade’s embezzlement offense had to “involve[ ] fraud or deceit in which the loss to the victim or victims exceeded] $10,000.” 8 U.S.C. § 1101(a)(43)(M)(i). The court treated the statute as divisible, meaning that Akinsade could have been convicted either for acting with the intent to defraud or to injure the bank. See Akinsade, 678 F.3d at 145. Using the modified categorical approach, the court “examine[d] whether Akinsade’s record of conviction necessarily admits facts establishing ... the intent to defraud rather than the intent to injure.” Id. The Second Circuit concluded that “because Akinsade did not admit to, was not charged with, and was not required to plead to, acting with an intent to defraud, his plea does not necessarily rest on facts identifying his conviction as an offense involving fraud or deceit.” Id. at 146 (internal quotation marks and citation omitted).
*260 The Second Circuit vacated the BIA’s order of removal and remanded. Since the aggravated felony ground was the only remaining ground for removal asserted by the DHS, Akinsade filed a motion with the BIA to terminate removal proceedings. Akinsade argued that there was nothing for the BIA to do on remand except enter ah order of termination.
The government filed a response indicating that it did not oppose the motion to terminate removal. Although the government refused to concede that Akinsade’s conviction for embezzlement in violation of 18 U.S.C. § 656 did not constitute “an aggravated felony offense involving fraud or deceit,” it explained that, in light of “other considerations .... in this specific case,” the government had decided “in the exercise of prosecutorial discretion” not to seek further judicial review “of whether the ... embezzlement conviction [wa]s an aggravated felony.” [4]
This court requested supplemental briefing from the parties on the effect, if any, of the Second Circuit’s opinion concluding that Akinsade is not deportable based on this embezzlement conviction. In its supplemental brief, the government argues that since the Second Circuit’s immigration decision eliminated DHS’s only grounds for removal and Akinsade is not facing deportation, he cannot show any adverse consequences or prejudice flowing from his attorney’s performance. Furthermore, the government argues that in light of the Second Circuit’s decision, Akinsade’s lawyer did not misadvise him in the first place by telling him that a guilty plea would not render Akinsade deportable. By contrast, Akinsade insists the Second Circuit’s decision has no determinative bearing on his claim for coram nobis relief. Akinsade now argues a new theory that he still can show prejudice because he cannot become a naturalized citizen unless his conviction is vacated and because, as a convicted felon, he is unable to obtain security clearances or advance his career. Additionally, Akinsade claims he “arguably” will remain subject to removal until he receives a grant of coram nobis relief.
II.
A writ of error coram nobis is an “extraordinary” remedy that may be used to correct “errors of the most fundamental character” that rendered the underlying proceeding invalid when no other alternative remedy is available. United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (internal quotation marks omitted); see United States v. Denedo, 556 U.S. 904, 917, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009) (“[C]Joram nobis petitions [permit courts] to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect.”); id. at 911, 129 S.Ct. 2213 (“Another limit, of course, is that an extraordinary remedy may not issue when alternative remedies, such as habeas corpus, are available.”); United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir.1988). Ineffective assistance of counsel constitutes the kind of fundamental defect potentially subject to attack via a writ of error coram nobis. See United States v. Orocio, 645 F.3d 630, 634 n. 4 (3d Cir.2011) (“The writ is available to persons not held in custody [to] attack a conviction for fundamental defects, such as ineffective *261 assistance of counsel.” (internal quotation marks omitted)). Furthermore, in addition to showing a fundamental defect is at issue that casts doubt on the validity of the conviction and that there is no other remedy available, a coram nobis petitioner must also show that he exercised diligence in seeking the extraordinary writ. See Klein v. United States, 880 F.2d 250, 253 (10th Cir.1989). That is, the petitioner must establish that there were “sound reasons” for “fail[ing] to seek appropriate earlier relief.” Morgan, 346 U.S. at 512, 74 S.Ct. 247.
A reviewing court must presume that the underlying “proceedings were correct and the burden rests on the accused to show otherwise.” Id.; see Klein, 880 F.2d at 253 (“[T]he burden is on the petitioner to demonstrate that the asserted error is jurisdictional or constitutional and results in a complete miscarriage of justice.”). The burden of establishing the requirements for coram nobis relief is a very substantial one, described by some jurists as exceeding that of an ordinary habeas petitioner. See United States v. Stoneman, 870 F.2d 102, 106 (3d Cir.1989).
Although the district court’s order did not explicitly examine each of the foregoing requirements for coram nobis relief,[5] the court implicitly addressed the fundamental-defect requirement when it considered Akinsade’s ineffective assistance claim. To establish a Sixth Amendment claim of ineffective assistance of counsel, the petitioner must satisfy the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by showing (1) that defense counsel’s performance “fell below an objective standard of reasonableness” measured by “prevailing professional norms,” id. at 688, 104 S.Ct. 2052, and (2) that the “deficient performance prejudiced [his] defense,” id. at 687, 104 S.Ct. 2052. That is, Akinsade must show “that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Because this is an objective test, Akinsade “cannot make that showing merely by telling us now that [he] would have gone to trial then if [he] had gotten different advice.” Pilla v. United States, 668 F.3d 368, 373 (6th Cir.2012). Rather, “to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.” Padilla v. Kentucky, — U.S. -, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).
As noted previously, the district court concluded that Akinsade received deficient legal counsel under Strickland’s first prong, but determined that Akinsade failed to establish the prejudice required by Strickland’s second prong because the district court advised Akinsade during plea proceedings that he “could be deported if *262 the Court accepted his guilty plea to the felony charge” and Akinsade indicated that he wanted to plead guilty even “knowing that his guilty plea could trigger deportation proceedings.” J.A. 87. Thus, the district court refused to vacate Akinsade’s plea and denied the coram nobis petition.
III.
A.
Until Akinsade v. Holder was decided, it had been a fundamental assumption in this case that the embezzlement offense to which Akinsade pled guilty was an aggravated felony — a removable offense — and that Akinsade was actually going to be deported. Based on this premise, the district court concluded that the polar-opposite advice Akinsade’s attorney offered was incorrect and amounted to deficient performance under Strickland’s first prong. The government, too, took no issue in this appeal with the district court’s conclusion that counsel’s performance was constitutionally deficient, and chose instead to focus on Akinsade’s inability to prove prejudice in the face of the district court’s accurate recitation of potentially adverse consequences that could flow from entering a guilty plea, including deportation for non-citizens.[6]
The assumption that Akinsade will be deported based on his guilty plea to an aggravated felony is no longer true after Akinsade v. Holder. Based on that decision, we now know that Akinsade did not plead guilty to a removable offense and will not be deported. And, whether by sheer good fortune or something else, Akinsade’s lawyer correctly told Akinsade that he was not pleading guilty to a deportable offense and that he was not going to be deported.[7]
Thus, the conclusion that Akinsade established the first step of his Strickland claim was therefore based on the false underlying premise that Akinsade’s embezzlement conviction constituted a deportable aggravated felony and that he faced mandatory deportation. Although his reasoning was flawed, Akinsade’s lawyer was not wrong when he told him that pleading guilty would not render him deportable.
B.
Akinsade’s argument that he was prejudiced by his attorney’s performance rests on the same false premise that “not only did accepting the plea render Akinsade deportable, [but] it [also] made him an ‘aggravated felon’ ..., making deportation a near-certainty barring him from virtually all forms of relief from removal.” Appellant’s First Supp. Brief at 32. Akinsade alleges that had he been correctly advised by his lawyer, he would not have pled guilty. Akinsade fails, however, to explain *263 why it “would have been rational,” Padilla, 130 S.Ct. at 1485, to reject the plea bargain and proceed to trial when deportation was not a consequence of pleading guilty. Indeed, for someone whose primary concern was to avoid removal from the United States,[8] the suggestion that Akinsade would have gone to trial on an offense he does not deny committing even though a guilty plea would not have resulted in deportation seems dubious at best. As Akinsade does not suggest that he would have been acquitted of embezzlement, the only thing Akinsade might have stood a good chance of gaining by going to trial was a longer sentence. See U.S.S.G. § 3E1.1 cmt. n. 2. (explaining that the acceptance of responsibility “adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt”).
As a hedge against the adverse effect of the Second Circuit’s decision on his prejudice argument, Akinsade in his supplemental brief puts a new spin on his claim that he can satisfy Strickland’s prejudice prong. First, he believes he “arguably” remains subject to removal because the DHS “refuses to concede” that an order from the BIA terminating removal proceedings will prevent it from continuing to seek removal based on Akinsade’s embezzlement conviction. Akinsade distorts the government’s position. In fact, the government acknowledged to our panel that, based on the Second Circuit’s decision, “the BIA no longer has a basis to remove” Akinsade and that he is “no longer facing deportation.” Appellee’s Second Supp. Brief at 3. Moreover, in filing its non-opposition to the motion to terminate removal proceedings, the government assured the BIA that, although it disagreed with Akinsade v. Holder, it would not seek further review of that decision. Moreover, general res judicata principles preclude the government from initiating subsequent removal proceedings against Akinsade based on the embezzlement conviction. Res judicata applies in immigration proceedings and “bars the government from bringing a second [removal] case based on evidence ... that it could have presented in the first case.” Bravo-Pedroza v. Gonzales, 475 F.3d 1358, 1359 (9th Cir.2007). The doctrine of res judicata also prevents claim “splitting” or the use of “several theories of recovery as the basis for separate suits.” Alvear-Velez v. Mukasey, 540 F.3d 672, 677 (7th Cir.2008) (internal quotation marks omitted). Thus, the government generally cannot initiate a new removal proceeding based on charges it could have asserted in a prior removal proceeding. And, finally, Akinsade cannot establish that he has suffered prejudice based on what the government might do in the future.
Akinsade also claims that the prejudice he has suffered includes the possibility that he will be unable to become a citizen through the naturalization process. Throughout this extended litigation, Akinsade has not raised naturalization as a central concern. Although Akinsade mentioned in passing that his attorney advised he “would not be deported and that [he] would become a naturalized citizen in five years,” J.A. 55, Akinsade did not develop his claim that his guilty plea should be vacated because he was misinformed or uninformed about his subsequent chances of naturalizing. Only now, after we requested supplemental briefing on the effect of the Second Circuit’s decision, does *264 Akinsade discuss this particular consequence in detail. He therefore has waived the argument that he would not have pled guilty had he been properly informed about the effect of a guilty plea on his plans to become a naturalized citizen. See United States v. Bowles, 602 F.3d 581, 583 n. * (4th Cir.2010) (concluding that argument mentioned for the first time in supplemental briefing is waived).
In any event, Akinsade fails even to articulate an ineffective assistance claim with respect to the naturalization consequences of the guilty plea. First, he does not explain whether his claim is that his attorney failed to advise him about how a guilty plea might affect naturalization or that he misadvised him or both. Nor does Akinsade explain how any alleged misadvice or failure to advise regarding naturalization affected his decision to plead guilty. Akinsade speculates that he may not be able to naturalize with this conviction on his record. But, he fails to explain why “there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill, 474 U.S. at 59, 106 S.Ct. 366. Thus, Akinsade falls far short of the showing required to establish prejudice under Stñckland.
IV.
Furthermore, Akinsade v. Holder invalidates my colleagues’ conclusion that the district court’s warning “that Akinsade’s plea could lead to deportation” was too “general and equivocal” to “ ‘properly inform’ Akinsade of the consequence he faced by pleading guilty: mandatory deportation.” Ironically, had the district court informed Akinsade that deportation was a certainty if he pled guilty, it would have misinformed Akinsade about the consequences he faced and possibly encouraged him to go to trial unnecessarily.
It is important to note, however, that even if the Second Circuit had affirmed the BIA’s order of removal, Akinsade could not, as a matter of law, have established prejudice for purposes of his ineffective assistance claim. The plea colloquy and the findings of fact made in the coram nobis proceedings by the district judge who took the plea establish as a matter of law that Akinsade knew that he risked removal and decided to plead guilty anyway. Akinsade acknowledged on the record that he understood the district court’s warning that a guilty plea could trigger removal and other consequences and that he still wished to plead guilty. The district judge confirmed this as a fact in his findings made in his order denying coram nobis relief.
Based on such circumstances, our circuit precedent in United States v. Foster, 68 F.3d 86 (4th Cir.1995), precludes Akinsade from establishing prejudice as a matter of law. In Foster, we articulated the rule that where “any misinformation [the petitioner] may have received from his attorney [is] corrected by the trial court at the Rule 11 hearing,” there is no prejudice for purposes of a Strickland claim. Foster, 68 F.3d at 88. This appeal is very similar to Foster where the petitioner alleged he had been assured by counsel that he would not be sentenced as a career offender and that “if he had been correctly told that he could be sentenced as a career offender” he would have gone to trial instead of pleading guilty. Id. The district court, however, advised petitioner during the plea colloquy that he faced a “possible maximum” prison term of 20 years, and petitioner indicated that he understood that possibility. Id. We concluded that petitioner, having been informed of the “potential sentence,” could not establish prejudice as a matter of law. Id.
*265 There is no material difference between this case and Foster. The district court informed Akinsade that he could be removed; the district court in Foster likewise explained in conditional language that petitioner could receive up to 20 years. See id. Akinsade is in no different position than the petitioner in Foster. In fact, the “careful” explanation in Foster that petitioner potentially faced a 20-year sentence did not precisely address counsel’s misadvice that petitioner would not be sentenced as a career offender. The admonishment given in Foster was arguably more oblique than the one given to Akinsade.
Clearly, the district court’s statement that removal was a consequence that “could be triggered” by pleading guilty, coupled with Akinsade’s admission that he understood the consequences and still intended to plead guilty, was enough to show removal was a risk that Akinsade was willing to accept. Because Akinsade was advised by the district court that he risked removal by pleading guilty and affirmed his understanding of the court’s advice, the district court correctly decided that Akinsade failed, as a matter of law, to satisfy the prejudice prong of his Strickland ineffective assistance claim.[9]
V.
For the reasons I have expressed, the district court’s decision was clearly correct even before the Second Circuit issued Akinsade v. Holder. Now that it has been established that Akinsade did not plead guilty to an aggravated felony and will not be removed, I cannot comprehend how one can still conclude that Akinsade is entitled to relief based on his lawyer’s correct advice that Akinsade would not be deported as the result of his guilty plea.
I therefore dissent.

. The criminal information alleged that "Akinsade being an agent and employee of Chevy Chase Bank ... did knowingly embezzle, abstract, purloin and willfully misapply monies and funds entrusted to the custody and care of such bank in the approximate amount of $16,400.” J.A. 6.

. The transcript of the plea colloquy provides in relevant part:
THE COURT: You understand that this offense of embezzlement is a felony and if you are found guilty of a felony, there are certain civil ramifications that flow from this. Let me give you examples and I don’t know all of the laws in all of the States, but people who are found guilty of felonies, often lose their right to vote, certain offices they cannot hold, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can’t possess firearms. Certain jobs may be denied you.
If you are on parole or probation with another system, that can be affected. Or if you are not a citizen, you could be deported. All of these things could be triggered by being found guilty of a felony. Do you understand that?
THE DEFENDANT: Yes, Your Honor.
*258 THE COURT: Knowing that do you still wish to plead guilty?
THE DEFENDANT: Yes, Your Honor.
S.J.A. 1.

. The Department of Homeland Security ("DHS”) also sought to remove Akinsade on two additional grounds. First, DHS charged that the embezzlement conviction was a removable offense because it constituted a crime of moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(i). Second, DHS charged that Akinsade was removable because he had adjusted his status by fraud or willfully misrepresenting a material fact. The Immigration Judge rejected both grounds, and the government did not pursue them further. See Akinsade v. Holder, 678 F.3d 138, 142 & n. 4 (2d Cir.2012).

. The only circumstance expressly noted by the government as militating against a further challenge to the Second Circuit's decision was the coram nobis appeal pending before this court. The government explained that if Akinsade obtained coram nobis relief, his conviction would be vacated and he “would no longer be subject to any removal proceedings.” Obviously, such a result could easily undermine the government’s efforts to challenge the Second Circuit’s decision.

. For example, the district court never determined whether Akinsade demonstrated that "sound reasons” existed for not seeking appropriate relief sooner. See Morgan, 346 U.S. at 512, 74 S.Ct. 247. At the hearing, the district court hinted that Akinsade articulated an acceptable explanation for the nine-year delay before attacking the guilty plea. In the written order, however, the court stated simply that it “recogniz[ed] that the Writ of Co-ram Nobis is an extraordinary writ” but decided to “consider the Petition on its merits.” J.A. 86. It is simply not clear whether the district court actually made a finding that sound reasons for the delay existed or whether the court simply declined to address the issue in light of the dispositive effect of its ruling on the ineffective assistance claim. This is a matter that requires the district court to make a factual determination. See Nicks v. United States, 955 F.2d 161, 167-68 (2d Cir.1992). It is not prudent for an appellate panel to simply decide the issue in the first instance. See supra at 252-53.

. Although the government did not challenge the district court's conclusion that the performance of Akinsade's attorney was objectively unreasonable, following the Second Circuit's decision the government aptly noted that “it now has been demonstrated that Petitioner’s attorney in 2000 did not misadvise him: Petitioner's guilty plea to embezzlement will not render him deportable.” Appellee's Second Supp. Brief at 4.

. Counsel's conclusion was correct that Akinsade was not pleading to a deportable offense, but his apparent basis for drawing this conclusion was obviously wrong. Akinsade's plea counsel believed that a conviction on the embezzlement charge would not constitute a deportable offense "because [Akinsade] did not have two felony convictions” on his record. J.A. 57. This reasoning was incorrect since there are various types of offenses that alone render an alien removable. See 8 U.S.C. § 1227(a)(2). His conclusion that Akinsade would not be removable based on this offense, however, was exactly right.

. Akinsade asserts that, prior to January 2009, he "had no reason to believe that [his] conviction would affect [his] immigration status and [he] therefore did not seek to set aside [his] conviction.” J.A. 56.

. My concern about the panel's decision goes beyond my disagreement with the conclusion that Akinsade is entitled to have his plea vacated based on advice from his lawyer that ultimately turned out to be accurate. Because the legal analysis of an ineffective assistance claim is identical whether it is raised in a coram nobis proceeding or a habeas proceeding, this decision opens the door for habeas petitioners as well as those in coram nobis to attack guilty pleas on collateral review simply by showing that defense counsel possibly gave inaccurate advice about a consequence of the guilty plea — even when the petitioner was expressly advised by the court during the plea colloquy that such a consequence was a possible result of the plea. It will no longer be enough for a court to advise the defendant that removal or any other consequence is a possibility. A vigilant district court that seeks to ensure the finality of its guilty pleas will now have to make a precise determination as to whether the consequence will in fact occur. As this case illustrates, this is often a difficult task and we may be creating more problems than we solve by requiring this kind of specificity from a district court to ensure that guilly pleas are not vacated years later.