# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

TEMITOPE AKINSADE,

      *Defendant-Appellant.*

No. 09-7554

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:00-cr-00099-AW-1)

Argued: December 9, 2011

Decided: July 25, 2012

Before TRAXLER, Chief Judge, and GREGORY and
WYNN, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Gregory
wrote the majority opinion, in which Judge Wynn joined.
Chief Judge Traxler wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Thomas Kirk Ragland, DUANE MORRIS, LLP,
Washington, D.C., for Appellant. Christen Anne Sproule,
OFFICE OF THE UNITED STATES ATTORNEY, Green-

belt, Maryland, for Appellee. **ON BRIEF:** Richard S. Basile, Greenbelt, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Jonathan C. Su, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

Appellant Temitope Akinsade appeals the district court's denial of his petition for writ of error coram nobis pursuant to 28 U.S.C. § 1651 claiming that he was denied effective assistance of counsel when he plead guilty to embezzlement by a bank employee in violation of 18 U.S.C. § 656, a Class B felony. For the following reasons, we grant the petition and vacate Akinsade's conviction.

I.

Now thirty years old, Akinsade is a Nigerian citizen who legally came to America in July 1988 at the age of seven and became a lawful permanent resident in May 2000. In 1999, at the age of nineteen, Akinsade was employed as a teller at a Chevy Chase bank in Aspen Hill, Maryland. During his employment, Akinsade cashed checks for several neighborhood acquaintances, who were not listed as payees on the checks, and deposited a portion of the proceeds from those checks into his own account. Eventually, Akinsade reported the transactions to his supervisor, who then contacted the FBI. When interviewed by the FBI several months later, Akinsade agreed to cooperate against the individuals for whom he cashed the checks. Neither arrested nor taken into custody at that time, Akinsade was ordered to appear in court at a later date.

On March 1, 2000, Akinsade was charged with embezzlement by a bank employee in the amount of $16,400. 18 U.S.C. § 656 (1948). Considering the Government's plea agreement, Akinsade asked his attorney on at least two different occasions about the potential immigration consequences of a guilty plea. Both times his attorney misadvised him that he could not be deported based on this single offense. His attorney told him that he could only be deported if he had two felony convictions. This advice was contrary to the law at that time. *See* 8 U.S.C. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii) (1952).

Relying on his attorney's advice that one count of embezzlement was not a deportable offense, Akinsade pled guilty. The plea agreement made no mention that deportation was mandatory or even possible due to the offense. During the Rule 11 plea colloquy, the district court reviewed the civil ramifications of his plea:

The Court: [P]eople who are found guilty of felonies, often lose their right to vote, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can't possess firearms. Certain jobs may be denied you.

If you are on parole or probation with another system, that can be affected. Or if you are not a citizen, you could be deported. All of these things could be triggered by being found guilty of a felony. Do you understand that?

Akinsade: Yes, Your Honor.

The Court: Knowing that do you still wish to plead guilty?

Akinsade:            Yes, Your Honor.

Supp. J.A.(I) 1.

On June 5, 2000, the district court sentenced Akinsade to one month of imprisonment to be served in community confinement, a three-year term of supervised release, and a special assessment of $100. At sentencing, the district court recognized that Akinsade had paid the full amount of restitution, which came to $8,000. The court also determined that Akinsade's conduct was "out of character" based on his family background. J.A. 41. The court thus gave Akinsade the minimum sentence under the sentencing guidelines.

After serving his sentence, Akinsade attended the University of Maryland where he received a bachelor's degree in computer science. He later earned a master's degree from the university, graduating with a 3.9 GPA, and received a fellowship from the National Science Foundation. Akinsade then entered into a leadership program at General Electric Company and moved to upstate New York.

Almost nine years after Akinsade's conviction, on January 8, 2009, immigration authorities arrested him at home and placed him in detention in Batavia, New York. After seventeen months in detention, the immigration authorities released Akinsade and charged him with removability as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his 2000 embezzlement conviction.[1]

Under threat of deportation,[2] Akinsade filed this petition for

---

[1] At oral arguments the Government stated that the reason for the nine-year delay in Akinsade's arrest for deportation was due to "the confusion" arising from his receipt of a green card between the time of the plea agreement and his sentence for embezzlement.

[2] Akinsade moved for a stay of his deportation proceedings pending this appeal. We denied his motion on April 14, 2010. During oral arguments, the Government informed the Court that Akinsade's appeal of his deportation was pending before the Second Circuit.

writ of error coram nobis in federal court alleging a violation of his Sixth Amendment rights due to his counsel's misadvice. The Government argued that Akinsade was not entitled to this extraordinary remedy because he alleged "a mere garden-variety ineffective assistance of counsel claim" that was not a "fundamental error." J.A. 50.

After conducting a hearing, the district court denied the petition. The court held that while counsel's affirmative misrepresentations rendered his assistance constitutionally deficient under the first prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Akinsade was not prejudiced as required under *Strickland*'s second prong. It reasoned that its admonishment of the potential for deportation during the plea colloquy cured counsel's affirmative misrepresentations. Akinsade timely appeals the denial of the petition.[3]

## II.

This Circuit has not clearly expressed the standard with which to review a district court's denial of a petition of writ of error coram nobis. *See United States v. Wilson*, No. 94-7322, 1996 WL 71098, at *2 (4th Cir. Feb. 7, 1996) (finding

---

[3]After Akinsade filed his opening brief, the Government moved to hold the appeal in abeyance pending the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). We granted the motion and suspended all briefing. On March 31, 2010, the Supreme Court rendered its decision in *Padilla*. In May 2010, the case was removed from abeyance and the parties completed their briefing taking into consideration *Padilla*. Having reviewed the *Padilla* decision and the parties' briefs, we decline to address the issue of whether *Padilla* is retroactively applicable to this case. *Padilla* only reached prong one of *Strickland* and neither party challenges the district court's holding that the affirmative misrepresentations provided by Akinsade's counsel were constitutionally deficient. Consequently, the *Padilla* decision is not "a necessary predicate to the resolution" of the issues raised on appeal and we need not reach the retroactivity issue. *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (noting that the retroactivity principle set forth in *Teague v. Lane*, 489 U.S. 288, 301 (1989), is not jurisdictional such that it must be raised and decided by the courts).

that the district court did not abuse its discretion when it denied the petitioner's writ of error coram nobis without an evidentiary hearing). Other circuits have applied an abuse-of-discretion standard in this context. *See United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (quoting *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996)). We apply the same standard and thus review "the district court's ultimate decision to deny the writ for abuse of discretion." *Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008), *abrogated on other grounds by Padilla v. Kentucky*, 130 S. Ct. 1473, 1481 (2010).

As a remedy of last resort, the writ of error coram nobis is granted only where an error is "of the most fundamental character" and there exists no other available remedy. *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" *United States v. Denedo*, 129 S. Ct. 2213, 2220 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 186 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A petitioner seeking this relief must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). For the following reasons, we hold that Akinsade has met all four requirements.

First, Akinsade cannot seek relief under the typical remedies for a direct or collateral attack of a federal judgment and sentence because he is no longer in custody. *See* 28 U.S.C. § 2255 (1948); 28 U.S.C. § 2241 (1948). Second, valid rea-

sons exist for Akinsade not attacking the conviction earlier. Until physically detained by immigration authorities in 2009, Akinsade had no reason to challenge the conviction as his attorney's advice, up to that point in time, appeared accurate.[4] With respect to the third coram nobis requirement, the risk of deportation is an adverse consequence of conviction sufficient to create a case or controversy as required by Article III of the Constitution. *See United States v. Kwan*, 407 F.3d 1005, 1014 (9th Cir. 2005), *abrogated on other grounds by Padilla*, 130 S. Ct. 1473.

Under the final requirement, we must consider whether counsel's misadvice is an error of the "most fundamental character" such that coram nobis relief is required to "achieve justice." *Denedo*, 129 S. Ct. at 2220. To determine this, we examine the merits of Akinsade's ineffective assistance of counsel claim to decide whether Akinsade has been prejudiced. *See Mandel*, 862 F.2d at 1074-75.

## A.

To show prejudice, Akinsade must demonstrate that but for his counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The district court determined that Akinsade had not been prejudiced because its admonishment regarding potential immigration

---

[4]The dissent contends that the district court did not make a finding as to whether valid reasons exist to explain why Akinsade did not seek appropriate relief sooner. To support this contention, the dissent cites *Nicks v. United States*, 955 F.2d 161, 167-68 (2d Cir. 1992). In that case, the Second Circuit concluded that the record before it was insufficient to resolve this requirement. *Id.* As a result, the court remanded the case to the district court to make any necessary factual findings. In this case however, the record demonstrates that Akinsade had not discovered that his counsel misadvised him until he was physically detained by immigration authorities nine years later. Because the record is sufficient for us to decide the issue, we need not remand the case.

consequences of the guilty plea and Akinsade's acknowledgement of that admonishment functioned to correct the error of his counsel's affirmative misrepresentations. We disagree in light of the equivocal nature of the admonishment, counsel's affirmative misadvice that is clearly contrary to law, and the severity of the consequence itself.

A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment. *United States v. Herandez-Monreal*, 404 F. App'x 714, 715 (4th Cir. 2011) (finding that the defendant was not prejudiced by counsel's failure to advise of deportation consequences when, during his Rule 11 proceeding, the defendant "affirmatively acknowledged his understanding that his plea 'could definitely make it difficult, if not impossible, for [him] to successfully stay legally in the United States'"); *State v. Yahya*, No. 10AP-1190, 2011 WL 5868794, at *5 (Ohio Ct. App. Nov. 22, 2011) ("[A] trial court's delivery of the warning [that defendant might be deported] would not necessarily cure her attorney's specific error regarding the consequences of a guilty plea."). Thus, in *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995), this Circuit determined that the defendant had not been prejudiced by any allegedly incorrect information counsel gave him regarding his sentence because of the district court's "careful explanation of the potential severity of the sentence" during the Rule 11 hearing. *Id.* at 88.[5] As part of the "careful expla-

---

[5]The dissent cites *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), where this Circuit noted that in the context of deciding whether a defendant has presented a "fair and just reason" for a Rule 32(d) motion to withdraw a guilty plea, a district court may look outside of the Rule 11 proceeding to events or information that affected the fairness of the proceeding. The *Lambey* Court reasoned that the outside information would not have affected the fairness of the Rule 11 proceeding if a district court "corrects or clarifies the erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice." *Id.* at 1395. Although *Lambey* referred to a curative admonish-

nation," the district court "specifically informed [the defendant] of the maximum penalties he faced," and asked whether he understood that he was exposing himself to "possible maximum penalties of up to 20 years in prison" plus "a supervised release term of as much as five years and at least three years." *Id.* The district court further asked whether the defendant understood that "the extent of [his] involvement in this particular offense, [and] [his] past record, if any" would affect his sentence. *Id.* Since the district court had "properly informed [the defendant] of the potential sentence he faced," this Circuit concluded that "he could not be prejudiced by any misinformation his counsel allegedly provided him." *Id.*

The case before us is decidedly different. Unlike *Foster*, the district court's admonishment was far from a "careful explanation" of the consequences of deportation. Instead, the district court warned that Akinsade's plea *could* lead to deportation. This general and equivocal admonishment is insufficient to correct counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense.[6]

---

ment, we should keep in mind that this passage was in the context of a Rule 32(d) challenge that centers on the fairness of a Rule 11 proceeding. *See id.* at 1394 (a Rule 32(d) motion "essentially challenges either the fairness of the Rule 11 proceeding or the fulfillment of a promise or condition *emanating from* the proceeding." (emphasis added)). Even in this context, we found probative the fact that in curing the erroneous, but not constitutionally deficient, information given by counsel, the court's admonishment was "*clear*[ ] and *correct*[ ]." *Id.* at 1396 (emphasis added).

[6]In other cases in which the district court's admonishment was found to have corrected counsel's ineffective assistance regarding deportation, the courts inquired into whether the defendant understood the *specific* warning pertaining to deportation. *See Herandez-Monreal*, 404 F. App'x at 715; *Gonzalez v. United States*, Nos. 10 Civ. 5463 (AKH), 08 Cr. 146(AKH), 2010 WL 3465603, *1 (S.D.N.Y., Sept. 03, 2010) (The district court twice advised the defendant that he faced potential deportation and specifically asked the defendant given that risk whether he still wanted to plead guilty.); *United States v. Cruz-Veloz*, Crim. No. 07-1023, 2010 WL 2925048, at *3 (D. N.J. Jul. 20, 2010) (finding the petitioner was not prej-

More importantly, the admonishment did not "properly inform" Akinsade of the consequence he faced by pleading guilty: mandatory deportation. Thus, Akinsade could not have known that deportation was a legally mandated consequence of his plea. Had he known this, he alleges that he would have chosen to go to trial rather than plead guilty. J.A. 56 ("Had I known that my immigration status *would* be impacted by a guilty plea, I would not have entered such a plea . . . .") (emphasis added). Akinsade's concern over certain deportation is evident by the fact that he asked his counsel twice if a plea would affect his immigration status. *Kwan*, 407 F.3d at 1017 (quoting *Hill*, 474 U.S. at 60) (explaining that a defendant's inquiry regarding deportation demonstrates "that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty") (internal quotation marks omitted).

As recognized in *Foster*, the specificity and breadth of the district court's admonishment are important considerations in deciding whether the defendant is prejudiced. These considerations are equally as important in this case where the advice given is patently erroneous and the consequences at stake are "particularly severe," *Padilla*, 130 S. Ct. at 1481 (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893)), and will likely result in the "loss of both property and life, or of all that makes life worth living," *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). "Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *INS v. St. Cyr*, 533 U.S. 289, 323 (2001). The severity of the consequence at issue and the clear error made by counsel in rendering the advice warrants a

---

udiced by counsel's failure to advise of deportation consequences because the district court admonished that he would subject himself to deportation and further asked whether he understood the deportation consequence and still wanted to plead guilty). Here, the district court did not elicit a direct response to the deportation admonishment, but instead asked if Akinsade understood a list of generalized warnings of which deportation was a part.

curative admonishment that is specific and unequivocal as to the deportation consequences of Akinsade's conviction.

Our decision today does not change the role of or impose any new obligations on the district court in Rule 11 proceedings. A district court's duty to ensure a knowing and voluntary plea arises from the Fifth Amendment's guarantee of due process and thus affords defendants a right distinct from the Sixth Amendment right to effective assistance of counsel. While we have recognized the inter-relationship between the two amendments in the context of guilty pleas, *see United States v. Smith*, 640 F.3d 580, 582 (4th Cir. 2011), we have never suggested that the sufficient protection of one right automatically corrects any constitutional deficiency of the other. Indeed, the Supreme Court has rejected a very similar argument. *See Missouri v. Frye*, 566 U.S. ___ (2012) (slip op., at 5) (explaining that the Court in *Padilla*, 130 S. Ct. 1473 (2010), rejected the state's argument that a knowing and voluntary plea supersedes defense counsel's affirmative misadvice on deportation consequences). As a result, we in no way suggest that in performing its role during the proceeding, a district court needs to be "clairvoyant" or must "guess" about whether a defendant has been misinformed regarding a particular consequence of a plea. When, as here, the claim raised is that of ineffective assistance of *counsel*, the overall focus must be on the prejudice arising from *counsel*'s deficient performance. If a district court's admonishment so happens to correct the deficient performance then there is no prejudice; however, if there is no correction, then our scrutiny is not directed toward the district court but appropriately to the constitutional offender.

Finally, we note that requiring a curative admonishment in this case that properly informed Akinsade that his plea was to a deportable offense is consistent with the Supreme Court's recent decision in *Lafler v. Cooper*, 556 U.S. ___ (2012) (slip op., at 7), which explained that for a fair trial to function as a cure for a pre-trial error such as ineffective assistance during

the plea process, that "particular error" must be addressed at trial. Similarly, in order for a district court's admonishment to be curative, it should address the particular issue underlying the affirmative misadvice. Here, the district court's admonishment touches upon the consequence of deportation but does not correct the particular misadvice given by counsel.

B.

Akinsade still must show that the misadvice is a "but for" cause of his entering the guilty plea. Under the prejudice prong of *Strickland*, "[t]he potential strength of the state's case must inform our analysis, inasmuch as a reasonable defendant would surely take it into account." *Ostrander v. Green*, 46 F.3d 347, 356 (4th Cir. 1995) (citing *Hill*, 474 U.S. at 59-60) *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996) (en banc). Applying this standard, we have held that counsel's affirmative misadvice on collateral consequences to a guilty plea was prejudicial where the prosecution's evidence "proved to be more than enough" for a guilty verdict but was "hardly invincible on its face." *Ostrander*, 46 F.3d at 356. We have further found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation. *United States v. Gajendragadkar*, No. 97-7267, 1998 WL 352866, at *2 (4th Cir. June 3, 1998). In *Gajendragadkar* we reasoned that "[a]lthough a trial would present the risk of deportation, it would provide [the defendant] the opportunity to contest the Government's evidence, or failing that, to challenge the Government's estimate loss." *Id.*

Our reasoning in *Gajendragadkar* applies here. Akinsade pleaded guilty to a deportable offense that "involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000." 8 U.S.C. § 1101(a)(43)(M)(i) (1952); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (1952). Before the district court,

Akinsade's counsel asserted that if Akinsade had gone to trial, he would have argued that the amount of loss was $8,000. His counsel noted that Akinsade was ordered to pay restitution in the amount of $8,000, which he had paid in full, and further that Akinsade would have disputed his involvement with a third check that placed him over the $10,000 amount. Consequently, the choice to go to trial is rational and we cannot conclude that "'a reasonable defendant in [Akinsade's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, 'would have pled guilty anyway had he known' that his attorney was mistaken." *Gajendragadkar*, 1998 WL 352866, at *2 (quoting *Ostrander*, 46 F.3d at 356). Thus, we find that counsel's affirmative misrepresentations that the crime at issue was non-deportable prejudiced Akinsade. Akinsade has met his burden under prong two of *Strickland*. In doing so, he has also demonstrated that he has suffered a fundamental error necessitating coram nobis relief. *See Kwan*, 407 F.3d at 1014 (ineffective assistance of counsel is a fundamental error); *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) (same).

## III.

Accordingly, we grant the petition for writ of error coram nobis and vacate Akinsade's conviction.[7]

---

[7]After oral arguments were heard in this case, the Second Circuit issued its opinion in *Akinsade v. Holder*, 678 F.3d 138, 143 (2d Cir. 2012) on May 1, 2012. In that case, Akinsade challenged the Board of Immigration Appeals's ("BIA") decision to affirm an order of removal on the basis that Akinsade's embezzlement conviction qualified as a crime of fraud and deceit, a deportable offense under the Immigration and Nationality Act, § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i). The Second Circuit vacated the order of removal, finding that under a modified categorical approach, Akinsade's record of conviction did not support the BIA's conclusion and remanded the case to the BIA for further proceedings consistent with the opinion. 678 F.3d at 147. On May 10, 2012, this Court requested supplemental briefing, instructing the parties to address what effect the Second Circuit opinion has on this case. After reviewing the par-

*VACATED & REMANDED*

TRAXLER, Chief Judge, dissenting:

Temitope Akinsade alleges his lawyer provided ineffective assistance by telling him if he pled guilty he would not be deported for his offense. Akinsade claims this advice left him unaware that he could be deported as a result of pleading guilty, even though the district judge specifically advised him that deportation was possible and he acknowledged this fact on the record before pleading guilty. He nonetheless asks us to vacate his conviction on the grounds that he would not have entered the underlying guilty plea had he known that doing so would subject him to mandatory deportation.

As it turns out, Akinsade's lawyer correctly predicted that Akinsade's guilty plea would not render him deportable. While this *coram nobis* appeal was pending before us, the Second Circuit decided Akinsade's immigration appeal in his favor, concluding that he did not plead guilty to a removable

ties' briefs, this Court concludes that *Akinsade v. Holder* has no binding legal effect on our decision and does not guarantee that Akinsade will never face deportation due to his conviction. The Second Circuit opinion does not preclude this Court, or any other Court of Appeals, from coming to a different conclusion on the same legal issue, and the parties have not directed this Court to any precedent in this Circuit that would prevent the Department of Homeland Security from initiating new removal proceedings against Akinsade under more favorable law. The Department is clear that it has not "concede[d] that a conviction for embezzlement by a bank employee . . . does not establish that the defendant has been convicted of an aggravated felony offense involving fraud or deceit," and although the Department has chosen not to seek further judicial or administrative review on Akinsade's removal proceedings "at this time," as this Court has explained, it is not foreclosed from doing so in the future. Appellant's Supplemental Br., Ex. 2, p. 2. Finally, this Court cannot ignore the Department's position that the threat of removal would no longer exist in this case "*if* [the Fourth Circuit] were to vacate the guilty plea to the embezzlement offense." *Id.* (emphasis added).

offense. *See Akinsade v. Holder*, 678 F.3d 138, 143 (2d Cir. 2012). The government has since indicated that it will not seek review of the Second Circuit's decision and will not oppose termination of removal proceedings against Akinsade. Akinsade cannot and will not be deported as a consequence of his guilty plea in this case. I therefore dissent from the odd decision to vacate Akinsade's plea based on advice from his lawyer that ultimately proved to be accurate.

I.

A true and complete analysis of Akinsade's claim for *coram nobis* relief is impossible without consideration of the parallel but intertwined proceedings in this case—the *coram nobis* appeal in this circuit, springing from the underlying criminal proceeding, and the immigration appeal in the Second Circuit. Since each proceeding greatly impacts the other, we cannot ignore Akinsade's immigration proceeding, or its ultimate conclusion, any more than we can ignore what occurred before or during Akinsade's plea colloquy. Accordingly, what follows is an abridged summary of these related and overlapping proceedings.

*The Underlying Criminal Conviction*

In March 2000, Akinsade was charged with embezzlement by a bank employee in the amount of $16,400. *See* 18 U.S.C. § 656.[1] According to Akinsade, his lawyer assured him that he would not be subject to deportation if he pled guilty to the embezzlement charge. Ultimately, after discussing his case with counsel, Akinsade decided to plead guilty. During the plea colloquy, the district judge told Akinsade, in contrast to the advice of his attorney, that he could in fact be removed if

---

[1]The criminal information alleged that "Akinsade being an agent and employee of Chevy Chase Bank . . . did knowingly embezzle, abstract, purloin and willfully misapply monies and funds entrusted to the custody and care of such bank in the approximate amount of $16,400." J.A. 6.

he pled guilty. Akinsade indicated that he understood these consequences but still wished to plead guilty.[2] Akinsade was sentenced to one month imprisonment, which he served in community confinement. Around this time, Akinsade adjusted his status to become a lawful permanent resident.

*Removal Proceedings in the Second Circuit*

In January 2009, immigration authorities detained Akinsade and charged him with removability on the basis that the embezzlement conviction qualified as an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The Immigration and Nationality Act ("INA") defines an "aggravated felony" to include any "offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).[3] Akinsade denied that he was removable and, as an alternative, sought cancellation of removal.

---

[2]The transcript of the plea colloquy provides in relevant part:

> THE COURT:  You understand that this offense of embezzlement is a felony and if you are found guilty of a felony, there are certain civil ramifications that flow from this. Let me give you examples and I don't know all of the laws in all of the States, but people who are found guilty of felonies, often lose their right to vote, certain offices they cannot hold, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can't possess firearms. Certain jobs may be denied you.
>
> If you are on parole or probation with another system, that can be affected. Or if you are not a citizen, you could be deported. All of these things could be triggered by being found guilty of a felony. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Knowing that do you still wish to plead guilty?
>
> THE DEFENDANT: Yes, Your Honor.

S.J.A. 1.

[3]The Department of Homeland Security ("DHS") also sought to remove Akinsade on two additional grounds. First, DHS charged that the embez-

The Immigration Judge sustained the aggravated felony charge of removal, finding "'that the information . . . and also the plea colloquy . . . make it clear that the respondent's actions related to a fraud on the bank and not an injury.'" *Akinsade*, 678 F.3d at 142. Akinsade appealed to the BIA, arguing that his record of conviction was insufficient to show that his embezzlement offense under 18 U.S.C. § 656 involved a specific intent to defraud. The BIA dismissed Akinsade's appeal, holding that the record of conviction was sufficient to show that Akinsade committed an aggravated felony.

In February 2010, Akinsade petitioned the Second Circuit Court of Appeals for review of the BIA's decision, arguing that he did not plead guilty to a removable offense because the record of conviction failed to establish that Akinsade acted with the "intent to defraud" required for an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). Akinsade's petition for review was still pending in the Second Circuit when this court held oral argument on Akinsade's *coram nobis* petition.

*Coram Nobis Proceedings in the Fourth Circuit*

In May 2009, while removal proceedings before the Immigration Judge were ongoing, Akinsade filed his *coram nobis* petition seeking to vacate his guilty plea, claiming that he received ineffective assistance of counsel in connection with his guilty plea. Specifically, Akinsade alleged that before he entered his guilty plea, his lawyer told him, contrary to law, that a guilty plea to the embezzlement charge "would not con-

---

zlement conviction was a removable offense because it constituted a crime of moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i). Second, DHS charged that Akinsade was removable because he had adjusted his status by fraud or willfully misrepresenting a material fact. The Immigration Judge rejected both grounds, and the government did not pursue them further. *See Akinsade v. Holder*, 678 F.3d 138, 142 & n.4 (2d Cir. 2012).

stitute a deportable offense." J.A. 55. Even though the district judge expressly warned Akinsade that he could be removed if he pled guilty, Akinsade claimed in his *coram nobis* petition that he had never been informed by his "criminal defense counsel or [the district court] that the guilty plea in this case would or could affect [his] immigration status," and that "[h]ad [he] known" he risked removal, he would not have pled guilty to embezzling more than $10,000 and would have gone to trial or attempted to plead to a lesser amount. J.A. 56.

The district court concluded that counsel's performance was constitutionally deficient, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), but determined that Akinsade failed to establish prejudice resulting from his attorney's performance because the court specifically advised him during the plea colloquy that deportation was a potential consequence:

> [T]he Court does not find the resulting prejudice required under the second prong of *Strickland*. Notwithstanding counsel's alleged affirmative misrepresentations, this Court advised Petitioner on March 20, 2000 that Petitioner could be deported if the Court accepted his guilty plea to the felony charge. The Court further inquired of Petitioner whether knowing that his guilty plea could trigger deportation proceedings, he still wished to plead guilty. Petitioner replied in the affirmative. (Trans. page 13)
>
> Accordingly, . . . the Court finds that Petitioner made a knowing, understanding and voluntary decision to plead guilty and . . . the Court does not believe that Petitioner on this record has presented a basis for ineffective assistance of counsel . . . .

J.A. 86-87. The district court therefore denied Akinsade's request for *coram nobis* relief from his embezzlement conviction.

Akinsade appealed the district court's order, arguing that the district court's admonishment during the plea colloquy was insufficient to "cure" counsel's misadvice because "the district court . . . did not instruct Akinsade that his guilty plea *would* automatically render him . . . deportable." Appellant's First Supp. Brief at 13. Akinsade contends on appeal that a court's mere warning that deportation is a possibility is not enough to overcome his attorney's misadvice; rather, Akinsade contends that the prejudice he suffered could only have been overcome by a warning from the district court "that deportation *would* result from the plea." *Id.* at 22.

The government's primary argument on appeal—at least before the Second Circuit's decision in *Akinsade v. Holder*—was that Akinsade "cannot establish that he was prejudiced by counsel's erroneous advice" in light of the fact that he had "been warned personally by the district court about possible deportation based on his guilty plea, and confirm[ed] his desire to proceed even in light of this possibility." Brief of Appellee at 6.

*The Second Circuit's Akinsade Decision and Subsequent Immigration Proceedings*

On May 1, 2012, the Second Circuit granted Akinsade's petition for review, holding that Akinsade *was not subject to deportation* as an aggravated felon. *See Akinsade*, 678 F.3d at 140, 143. To constitute an aggravated felony, Akinsade's embezzlement offense had to "involve[ ] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The court treated the statute as divisible, meaning that Akinsade could have been convicted either for acting with the intent to defraud or to injure the bank. *See Akinsade*, 678 F.3d at 145. Using the modified categorical approach, the court "examine[d] whether Akinsade's record of conviction necessarily admits facts establishing . . . the intent to defraud rather than the intent to injure." *Id.* The Second Circuit concluded that "because Akinsade did not

admit to, was not charged with, and was not required to plead to, acting with an intent to defraud, his plea does not necessarily rest on facts identifying his conviction as an offense involving fraud or deceit." *Id.* at 146 (internal quotation marks and citation omitted).

The Second Circuit vacated the BIA's order of removal and remanded. Since the aggravated felony ground was the only remaining ground for removal asserted by the DHS, Akinsade filed a motion with the BIA to terminate removal proceedings. Akinsade argued that there was nothing for the BIA to do on remand except enter an order of termination.

The government filed a response indicating that it did not oppose the motion to terminate removal. Although the government refused to concede that Akinsade's conviction for embezzlement in violation of 18 U.S.C. § 656 did not constitute "an aggravated felony offense involving fraud or deceit," it explained that, in light of "other considerations . . . . in this specific case," the government had decided "in the exercise of prosecutorial discretion" not to seek further judicial review "of whether the . . . embezzlement conviction [wa]s an aggravated felony."[4]

This court requested supplemental briefing from the parties on the effect, if any, of the Second Circuit's opinion concluding that Akinsade is not deportable based on this embezzlement conviction. In its supplemental brief, the government argues that since the Second Circuit's immigration decision eliminated DHS's only grounds for removal and Akinsade is not facing deportation, he cannot show any adverse conse-

---

[4]The only circumstance expressly noted by the government as militating against a further challenge to the Second Circuit's decision was the *coram nobis* appeal pending before this court. The government explained that if Akinsade obtained *coram nobis* relief, his conviction would be vacated and he "would no longer be subject to any removal proceedings." Obviously, such a result could easily undermine the government's efforts to challenge the Second Circuit's decision.

quences or prejudice flowing from his attorney's perfor-
mance. Furthermore, the government argues that in light of
the Second Circuit's decision, Akinsade's lawyer did not mis-
advise him in the first place by telling him that a guilty plea
would not render Akinsade deportable. By contrast, Akinsade
insists the Second Circuit's decision has no determinative
bearing on his claim for *coram nobis* relief. Akinsade now
argues a new theory that he still can show prejudice because
he cannot become a naturalized citizen unless his conviction
is vacated and because, as a convicted felon, he is unable to
obtain security clearances or advance his career. Additionally,
Akinsade claims he "arguably" will remain subject to removal
until he receives a grant of *coram nobis* relief.

## II.

A writ of error *coram nobis* is an "extraordinary" remedy
that may be used to correct "errors of the most fundamental
character" that rendered the underlying proceeding invalid
when no other alternative remedy is available. *United States
v. Morgan*, 346 U.S. 502, 512 (1954) (internal quotation
marks omitted); *see United States v. Denedo*, 556 U.S. 904,
917 (2009) ("[C]*oram nobis* petitions [permit courts] to con-
sider allegations that an earlier judgment of conviction was
flawed in a fundamental respect."); *id.* at 911 ("Another limit,
of course, is that an extraordinary remedy may not issue when
alternative remedies, such as habeas corpus, are available.");
*United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988).
Ineffective assistance of counsel constitutes the kind of funda-
mental defect potentially subject to attack via a writ of *error
coram* nobis. *See United States v. Orocio*, 645 F.3d 630, 634
n.4 (3d Cir. 2011) ("The writ is available to persons not held
in custody [to] attack a conviction for fundamental defects,
such as ineffective assistance of counsel." (internal quotation
marks omitted)). Furthermore, in addition to showing a funda-
mental defect is at issue that casts doubt on the validity of the
conviction and that there is no other remedy available, a
*coram nobis* petitioner must also show that he exercised dili-

gence in seeking the extraordinary writ. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). That is, the petitioner must establish that there were "sound reasons" for "fail-[ing] to seek appropriate earlier relief." *Morgan*, 346 U.S. at 512.

A reviewing court must presume that the underlying "proceedings were correct and the burden rests on the accused to show otherwise." *Id.*; *see Klein*, 880 F.2d at 253 ("[T]he burden is on the petitioner to demonstrate that the asserted error is jurisdictional or constitutional and results in a complete miscarriage of justice."). The burden of establishing the requirements for *coram nobis* relief is a very substantial one, described by some jurists as exceeding that of an ordinary habeas petitioner. *See United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989).

Although the district court's order did not explicitly examine each of the foregoing requirements for *coram nobis* relief,[5] the court implicitly addressed the fundamental-defect requirement when it considered Akinsade's ineffective assistance claim. To establish a Sixth Amendment claim of ineffective assistance of counsel, the petitioner must satisfy the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S.

---

[5]For example, the district court never determined whether Akinsade demonstrated that "sound reasons" existed for not seeking appropriate relief sooner. *See Morgan*, 346 U.S. at 512. At the hearing, the district court hinted that Akinsade articulated an acceptable explanation for the nine-year delay before attacking the guilty plea. In the written order, however, the court stated simply that it "recogniz[ed] that the Writ of Coram Nobis is an extraordinary writ" but decided to "consider the Petition on its merits." J.A. 86. It is simply not clear whether the district court actually made a finding that sound reasons for the delay existed or whether the court simply declined to address the issue in light of the dispositive effect of its ruling on the ineffective assistance claim. This is a matter that requires the district court to make a factual determination. *See Nicks v. United States*, 955 F.2d 161, 167-68 (2d Cir. 1992). It is not prudent for an appellate panel to simply decide the issue in the first instance. *See supra* at 7.

668 (1984), by showing (1) that defense counsel's performance "fell below an objective standard of reasonableness" measured by "prevailing professional norms," *id.* at 688, and (2) that the "deficient performance prejudiced [his] defense," *id.* at 687. That is, Akinsade must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because this is an objective test, Akinsade "cannot make that showing merely by telling us now that [he] would have gone to trial then if [he] had gotten different advice." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). Rather, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).

As noted previously, the district court concluded that Akinsade received deficient legal counsel under *Strickland*'s first prong, but determined that Akinsade failed to establish the prejudice required by *Strickland*'s second prong because the district court advised Akinsade during plea proceedings that he "could be deported if the Court accepted his guilty plea to the felony charge" and Akinsade indicated that he wanted to plead guilty even "knowing that his guilty plea could trigger deportation proceedings." J.A. 87. Thus, the district court refused to vacate Akinsade's plea and denied the *coram nobis* petition.

III.

A.

Until *Akinsade v. Holder* was decided, it had been a fundamental *assumption* in this case that the embezzlement offense to which Akinsade pled guilty was an aggravated felony—a removable offense—and that Akinsade was actually going to be deported. Based on this premise, the district court con-

cluded that the polar-opposite advice Akinsade's attorney offered was incorrect and amounted to deficient performance under *Strickland*'s first prong. The government, too, took no issue in this appeal with the district court's conclusion that counsel's performance was constitutionally deficient, and chose instead to focus on Akinsade's inability to prove prejudice in the face of the district court's accurate recitation of potentially adverse consequences that could flow from entering a guilty plea, including deportation for non-citizens.[6]

The assumption that Akinsade will be deported based on his guilty plea to an aggravated felony is no longer true after *Akinsade v. Holder*. Based on that decision, we now know that Akinsade did not plead guilty to a removable offense and *will not be deported*. And, whether by sheer good fortune or something else, Akinsade's lawyer correctly told Akinsade that he was not pleading guilty to a deportable offense and that he was not going to be deported.[7]

Thus, the conclusion that Akinsade established the first step of his *Strickland* claim was therefore based on the false underlying premise that Akinsade's embezzlement conviction constituted a deportable aggravated felony and that he faced mandatory deportation. Although his reasoning was flawed,

---

[6]Although the government did not challenge the district court's conclusion that the performance of Akinsade's attorney was objectively unreasonable, following the Second Circuit's decision the government aptly noted that "it now has been demonstrated that Petitioner's attorney in 2000 did not misadvise him: Petitioner's guilty plea to embezzlement will not render him deportable." Appellee's Second Supp. Brief at 4.

[7]Counsel's *conclusion* was correct that Akinsade was not pleading to a deportable offense, but his apparent *basis* for drawing this conclusion was obviously wrong. Akinsade's plea counsel believed that a conviction on the embezzlement charge would not constitute a deportable offense "because [Akinsade] did not have two felony convictions" on his record. J.A. 57. This reasoning was incorrect since there are various types of offenses that alone render an alien removable. *See* 8 U.S.C. § 1227(a)(2). His conclusion that Akinsade would not be removable based on this offense, however, was exactly right.

Akinsade's lawyer was not wrong when he told him that pleading guilty would not render him deportable.

### B.

Akinsade's argument that he was prejudiced by his attorney's performance rests on the same false premise that "not only did accepting the plea render Akinsade deportable, [but] it [also] made him an 'aggravated felon' . . . , making deportation a near-certainty barring him from virtually all forms of relief from removal." Appellant's First Supp. Brief at 32. Akinsade alleges that had he been correctly advised by his lawyer, he would not have pled guilty. Akinsade fails, however, to explain why it "would have been rational," *Padilla*, 130 S. Ct. at 1485, to reject the plea bargain and proceed to trial when deportation was not a consequence of pleading guilty. Indeed, for someone whose primary concern was to avoid removal from the United States,[8] the suggestion that Akinsade would have gone to trial on an offense he does not deny committing even though a guilty plea would not have resulted in deportation seems dubious at best. As Akinsade does not suggest that he would have been acquitted of embezzlement, the only thing Akinsade might have stood a good chance of gaining by going to trial was a longer sentence. *See* U.S.S.G. § 3E1.1 cmt. n.2. (explaining that the acceptance of responsibility "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt").

As a hedge against the adverse effect of the Second Circuit's decision on his prejudice argument, Akinsade in his supplemental brief puts a new spin on his claim that he can satisfy *Strickland*'s prejudice prong. First, he believes he "arguably" remains subject to removal because the DHS "refuses

---

[8]Akinsade asserts that, prior to January 2009, he "had no reason to believe that [his] conviction would affect [his] immigration status and [he] therefore did not seek to set aside [his] conviction." J.A. 56.

to concede" that an order from the BIA terminating removal proceedings will prevent it from continuing to seek removal based on Akinsade's embezzlement conviction. Akinsade distorts the government's position. In fact, the government acknowledged to our panel that, based on the Second Circuit's decision, "the BIA no longer has a basis to remove" Akinsade and that he is "no longer facing deportation." Appellee's Second Supp. Brief at 3. Moreover, in filing its non-opposition to the motion to terminate removal proceedings, the government assured the BIA that, although it disagreed with *Akinsade v. Holder*, it would not seek further review of that decision. Moreover, general *res judicata* principles preclude the government from initiating subsequent removal proceedings against Akinsade based on the embezzlement conviction. *Res judicata* applies in immigration proceedings and "bars the government from bringing a second [removal] case based on evidence . . . that it could have presented in the first case." *Bravo-Pedroza v. Gonzales*, 475 F.3d 1358, 1359 (9th Cir. 2007). The doctrine of *res judicata* also prevents claim "splitting" or the use of "several theories of recovery as the basis for separate suits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (internal quotation marks omitted). Thus, the government generally cannot initiate a new removal proceeding based on charges it could have asserted in a prior removal proceeding. And, finally, Akinsade cannot establish that he has suffered prejudice based on what the government might do in the future.

Akinsade also claims that the prejudice he has suffered includes the *possibility* that he will be unable to become a citizen through the naturalization process. Throughout this extended litigation, Akinsade has not raised naturalization as a central concern. Although Akinsade mentioned in passing that his attorney advised he "would not be deported and that [he] would become a naturalized citizen in five years," J.A. 55, Akinsade did not develop his claim that his guilty plea should be vacated because he was misinformed or uninformed about his subsequent chances of naturalizing. Only now, after

we requested supplemental briefing on the effect of the Second Circuit's decision, does Akinsade discuss this particular consequence in detail. He therefore has waived the argument that he would not have pled guilty had he been properly informed about the effect of a guilty plea on his plans to become a naturalized citizen. *See United States v. Bowles*, 602 F.3d 581, 583 n.* (4th Cir. 2010) (concluding that argument mentioned for the first time in supplemental briefing is waived).

In any event, Akinsade fails even to articulate an ineffective assistance claim with respect to the naturalization consequences of the guilty plea. First, he does not explain whether his claim is that his attorney failed to advise him about how a guilty plea might affect naturalization or that he misadvised him or both. Nor does Akinsade explain how any alleged misadvice or failure to advise regarding naturalization affected his decision to plead guilty. Akinsade speculates that he may not be able to naturalize with this conviction on his record. But, he fails to explain why "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, Akinsade falls far short of the showing required to establish prejudice under *Strickland*.

## IV.

Furthermore, *Akinsade v. Holder* invalidates my colleagues' conclusion that the district court's warning "that Akinsade's plea could lead to deportation" was too "general and equivocal" to "'properly inform' Akinsade of the consequence he faced by pleading guilty: mandatory deportation." Ironically, had the district court informed Akinsade that deportation was a certainty if he pled guilty, it would have misinformed Akinsade about the consequences he faced and possibly encouraged him to go to trial unnecessarily.

It is important to note, however, that *even if the Second Circuit had affirmed* the BIA's order of removal, Akinsade

could not, as a matter of law, have established prejudice for purposes of his ineffective assistance claim. The plea colloquy and the findings of fact made in the *coram nobis* proceedings by the district judge who took the plea establish as a matter of law that Akinsade knew that he risked removal and decided to plead guilty anyway. Akinsade acknowledged on the record that he understood the district court's warning that a guilty plea could trigger removal and other consequences and that he still wished to plead guilty. The district judge confirmed this as a fact in his findings made in his order denying *coram nobis* relief.

Based on such circumstances, our circuit precedent in *United States v. Foster*, 68 F.3d 86 (4th Cir. 1995), precludes Akinsade from establishing prejudice as a matter of law. In *Foster*, we articulated the rule that where "any misinformation [the petitioner] may have received from his attorney [is] corrected by the trial court at the Rule 11 hearing," there is no prejudice for purposes of a *Strickland* claim. *Foster*, 68 F.3d at 88. This appeal is very similar to *Foster* where the petitioner alleged he had been assured by counsel that he would not be sentenced as a career offender and that "if he had been correctly told that he could be sentenced as a career offender" he would have gone to trial instead of pleading guilty. *Id.* The district court, however, advised petitioner during the plea colloquy that he faced a "possible maximum" prison term of 20 years, and petitioner indicated that he understood that possibility. *Id.* We concluded that petitioner, having been informed of the "potential sentence," could not establish prejudice as a matter of law. *Id.*

There is no material difference between this case and *Foster*. The district court informed Akinsade that he *could* be removed; the district court in *Foster* likewise explained in conditional language that petitioner *could* receive up to 20 years. *See id.* Akinsade is in no different position than the petitioner in *Foster*. In fact, the "careful" explanation in *Foster* that petitioner potentially faced a 20-year sentence did not

precisely address counsel's misadvice that petitioner would not be sentenced as a career offender. The admonishment given in *Foster* was arguably more oblique than the one given to Akinsade.

Clearly, the district court's statement that removal was a consequence that "could be triggered" by pleading guilty, coupled with Akinsade's admission that he understood the consequences and still intended to plead guilty, was enough to show removal was a risk that Akinsade was willing to accept. Because Akinsade was advised by the district court that he risked removal by pleading guilty and affirmed his understanding of the court's advice, the district court correctly decided that Akinsade failed, as a matter of law, to satisfy the prejudice prong of his *Strickland* ineffective assistance claim.[9]

## V.

For the reasons I have expressed, the district court's decision was clearly correct even before the Second Circuit issued *Akinsade v. Holder*. Now that it has been established that

---

[9]My concern about the panel's decision goes beyond my disagreement with the conclusion that Akinsade is entitled to have his plea vacated based on advice from his lawyer that ultimately turned out to be accurate. Because the legal analysis of an ineffective assistance claim is identical whether it is raised in a *coram nobis* proceeding or a habeas proceeding, this decision opens the door for habeas petitioners as well as those in *coram nobis* to attack guilty pleas on collateral review simply by showing that defense counsel possibly gave inaccurate advice about a consequence of the guilty plea — even when the petitioner was expressly advised by the court during the plea colloquy that such a consequence was a possible result of the plea. It will no longer be enough for a court to advise the defendant that removal or any other consequence is a possibility. A vigilant district court that seeks to ensure the finality of its guilty pleas will now have to make a precise determination as to whether the consequence will in fact occur. As this case illustrates, this is often a difficult task and we may be creating more problems than we solve by requiring this kind of specificity from a district court to ensure that guilty pleas are not vacated years later.

Akinsade did not plead guilty to an aggravated felony and will not be removed, I cannot comprehend how one can still conclude that Akinsade is entitled to relief based on his lawyer's correct advice that Akinsade would not be deported as the result of his guilty plea.

   I therefore dissent.